

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JPL:BW                                   *271 Cadman Plaza East*
F. #2019R00489                           *Brooklyn, New York 11201*

April 14, 2026

By ECF

The Honorable Pamela K. Chen
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:    United States v. James Wellesley
>        Criminal Docket No. 22-79 (PKC)

Dear Judge Chen:

The government respectfully submits this letter in advance of the sentencing of the defendant James Wellesley (the "defendant" or "Wellesley"), which is scheduled for April 20, 2026 at 11:00 a.m.  For the reasons stated below, a sentence at the high end of the United States Sentencing Guidelines ("U.S.S.G." or the "Guidelines") range of 121 – 151 months' imprisonment is appropriate to account for the defendant's conduct, provide just punishment, and deter the defendant and others from similar conduct in the future.  The government also requests that the Court enter a Final Order of Forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. §§ 853(a) and (p), and 28 U.S.C. § 2461(c), in accordance with the Preliminary Order of Forfeiture previously entered by the Court.  See ECF No. 42.  Within 90 days of sentencing, the government will submit a proposed Order of Restitution, pursuant to 18 U.S.C. §§ 3663A and 3664.

## I.    Factual Background

From approximately June 2017 to February 2019, Wellesley and his co-defendant, Stephen Burton (together, "the defendants"), operated a brazen Ponzi scheme in which they fraudulently obtained over $97 million from over 140 victim investors.  See Apr. 14, 2026 Second Addendum to the Presentence Investigation Report.  When the defendants' Ponzi scheme ultimately unraveled, victims had incurred losses of over $83 million.  See Jan. 29, 2026 Presentence Investigation Report ("PSR") ¶ 15.

Through their companies Bordeaux Cellars, Limited and Bordeaux Cellars London Ltd. (collectively, "Bordeaux Cellars"), the defendants solicited investors to provide loans to cash-needy lenders in exchange for quarterly interest payments on the loaned funds.  Id. ¶ 8.  The

defendants falsely told investors that their loans were secured by bottles of luxury wine in Bordeaux Cellars's possession. Id. Wellesley, who served as the CFO and Operations Manager of Bordeaux Cellars, directly solicited investors at investor conferences. Id. ¶ 19. Contrary to the defendants' representations to their investors, Bordeaux Cellars did not possess the vast majority of the wine that was supposedly serving as security for the victims' loans and the money "invested" by the victims was not being loaned to cash-needy lenders, but rather was misappropriated by the defendants. Id. ¶¶ 13-14.

From June 2017 to December 2018, victims who had invested in Bordeaux Cellars's Term Loans received supposed interest payments and many victims rolled over their principal investments to new loans at the end of the loan terms. Id. ¶ 15. However, the supposed interest payments that victims received were not sourced from lenders paying interest on the loans, but rather were sourced from new investment funds fraudulently obtained by Bordeaux Cellars, in classic Ponzi scheme fashion. Id. ¶ 14. Of the over $97 million solicited from victims, the defendants only paid back approximately $14 million before their Ponzi scheme unraveled. Id. ¶ 15.

On February 28, 2022, Wellesley was charged by indictment with wire fraud, conspiracy to commit wire fraud and conspiracy to commit money laundering in violation of, respectively, 18 U.S.C. §§ 1343, 1349 and 1956(h). The defendant was arrested in the United Kingdom on February 4, 2022 and extradited to the United States on July 10, 2025. Id. ¶ 17. The defendant was detained in the United Kingdom during the pendency of his extradition proceedings and has been detained in the United States since his extradition. On October 7, 2025, Wellesley pleaded guilty to one count of wire fraud conspiracy, in violation of 18 U.S.C. § 1349, pursuant to a plea agreement with the government.

The defendant has at least two prior criminal convictions in the United Kingdom. Id. ¶ 43. In 1997, the defendant was convicted of false accounting and was incarcerated for two years. Id. ¶¶ 42-43. In 2013, the defendant was convicted of mortgage-related fraud and sentenced to a term of imprisonment of 75 months. Id. ¶ 43.

II.      Applicable Law

The Supreme Court has explained that a sentencing court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted). Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing sentence, the sentencing court shall consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]

(2) the need for the sentence imposed--

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct; [and]

(C) to protect the public from further crimes of the defendant.

18 U.S.C. § 3553(a).

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The sentencing court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

### III. The Guidelines Calculation

The government agrees with the Guidelines calculation as set forth in the PSR and below. See PSR ¶¶ 27-38.

| | | |
|---|---|---:|
| Base Offense Level (U.S.S.G. §§ 2X1.1(a), 2B1.1(a)(1)) | | 7 |
| Plus: | Loss Exceeds $65,000,000 (U.S.S.G. § 2B1.1(b)(1)(M)) | +24 |
| Plus: | 10 or More Victims / Substantial Financial Hardship 1+ Victim (U.S.S.G. § 2B1.1(b)(2)(B)) | +2 |
| Plus: | Offense Committed Outside the U.S. (U.S.S.G. § 2B1.1(b)(10)(B)) | +2 |
| Less: | Acceptance of Responsibility (U.S.S.G. § 3E1.1) | -3 |
| Total: | | 32 |

The defendant is in criminal history category I. Id. ¶ 41. Offense level 32 and criminal history category I yield a Guidelines sentencing range of 121 – 151 months' imprisonment.

### IV. A Sentence at the High End of the Guidelines Range is Appropriate

The government respectfully submits that a sentence at the high end of the Guidelines range of 121 – 151 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing. Such a sentence would adequately take into consideration the relevant Section 3553(a) factors, in particular the nature and seriousness of the defendant's fraudulent scheme, the need to promote respect for the law, the defendant's criminal history and

the need to both specifically deter the defendant and generally deter the public from engaging in similar financial frauds in the future.

A.      Analysis

A sentence of incarceration at the high end of the Guidelines range is appropriate, but not greater than necessary, to reflect the seriousness of Wellesley's offense. Wellesley and Burton together operated an international Ponzi scheme which resulted in victim losses of over $83 million. Their scheme affected at least 141 victims located across the globe, including at least 71 victims from the United States, 21 victims from the United Kingdom and 10 victims from Hong Kong. This is not speculative or intended loss, but rather actual loss to dozens of investors directly caused by Wellesley and his co-defendant.

To be clear, at no point was Bordeaux Cellars a legitimate business. This is not a case where the defendants attempted to operate an enterprise legitimately and only turned to fraudulent tactics upon encountering business difficulties with their legitimate operation. Bordeaux Cellars was an outright fraudulent enterprise from its very inception, and the defendants used Bordeaux Cellars to fund their lifestyles. Indeed, it is difficult to overstate the seriousness of the defendant's financial crime. See 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). To line his pockets, the defendant engaged in selfish, predatory conduct that targeted victims who were seeking legitimate investment opportunities and were lured into investing with Bordeaux Cellars based on Wellesley and Burton's lies.

A sentence at the high end of the Guidelines range is also appropriate to account for Wellesley's history of criminality and to specifically deter Wellesley from committing further crimes in the future. See 18 U.S.C. §§ 3553(a)(1), (a)(2)(B). Wellesley does not contest that he has previously been convicted of two separate white-collar crimes in the United Kingdom and already served meaningful time in prison – two years from 1997-1999 and over six years following a 2013 conviction for mortgage fraud. See PSR ¶¶ 42-43. These prior convictions and jail terms clearly had no deterrent effect on Wellesley. Indeed, Wellesley joined the Bordeaux Cellars scheme in June 2017, very shortly after being released from prison following his 2013 conviction which resulted in a jail term of 75 months. Id. ¶ 7. Wellesley's recidivism demands a substantial term of incarceration to protect the public from the defendant's next fraud.

In particular, a sentence at the high end of the Guidelines range is warranted because Wellesley's prior convictions from the United Kingdom are not counted in calculating Wellesley's criminal history. See U.S.S.G. § 4A1.2(h). Courts have routinely considered a defendant's prior foreign convictions that were not factored into the defendant's Guidelines calculation as a basis for an upward variance or an upward departure. See, e.g., United States v. Guzman-Betancourt, 456 F. App'x 64, 67-68 (2d Cir. 2012) ("the District Court did not err . . . by considering these [foreign] convictions in departing upward"); United States v. Simmons, 343 F.3d 72, 78 (2d Cir. 2003) ("The inadequacy of a defendant's criminal history category is not merely a permissible basis for an upward departure, it is . . . an 'encouraged' basis for such a departure.") (quoting Koon v. United States, 518 U.S. 81, 100 (1996)); United States v. Soliman, 889 F.3d 441, 445 (2d Cir. 1989) ("Once apprised of the possible constitutional infirmities surrounding a foreign conviction, the sentencing judge, in an exercise of informed discretion, may rely on the conviction

4

in deciding whether to depart from a Guidelines range, or increase a sentence within a range."). Though historically courts have considered a defendant's prior foreign convictions as a basis for a departure under U.S.S.G. § 4A1.3—which has since been deleted from the Guidelines—the Court can still consider the defendant's prior convictions, and the fact that they are not factored into the defendant's Guidelines calculation, under 18 U.S.C. § 3553(a). See 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); see also U.S.S.G. Ch. 1, Pt. A, Introductory Commentary ("The removal of departures from the Guidelines Manual does not limit the information courts may consider in imposing a sentence nor does it reflect a view from the Commission that such facts should no longer inform a court for purposes of determining the appropriate sentence.").[1]

A sentence at the high end of the Guidelines range is also needed to advance the compelling need for general deterrence of white-collar crime like that committed by the defendant and Burton. See 18 U.S.C. § 3553(a)(2)(C); United States v. Blech, 550 F. App'x 70, 71 (2d Cir. 2014) (summary order) ("Blech was sentenced based on the 18 U.S.C. § 3553(a) factors, including the need for specific deterrence for a recidivist, and the need for general deterrence for those who might otherwise feel that some white-collar crimes are 'game[s] worth playing.'") (quoting United States v. Goffer, 721 F.3d 113, 132 (2d Cir. 2013)); S. Rep. No. 98-225, at 76 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3259 ("The second purpose of sentencing is to deter others from committing the offense. This is particularly important in the area of white collar crime. Major white collar criminals often are sentenced to small fines and little or no imprisonment. Unfortunately, this creates the impression that certain offenses are punishable only by a small fine that can be written off as a cost of doing business."). Indeed, in the past, Congress has expressed concern about the leniency sentencing judges have afforded white-collar criminals. See Mistretta v. United States, 488 U.S. 361, 375 n.9 (1989); Stephen Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L. Rev. 1, 20-21 (1988). The concern is that a low sentence "undermines public confidence in whether the justice system is 'do[ing] equal right to the poor and to the rich.'" United States v. Hoffman, 901 F.3d 523, 556-57 (5th Cir. 2018) (quoting 28 U.S.C. § 453).

Furthermore, given that sophisticated fraud and money laundering schemes are incredibly difficult to detect and prosecute, there is greater need for general deterrence. See, e.g., Harmelin v. Michigan, 501 U.S. 957, 988 (1991) (noting that "since deterrent effect depends not only upon the amount of the penalty but upon its certainty, crimes that are less grave but significantly more difficult to detect may warrant substantially higher penalties"). Because

---

[1] Had Wellesley's two prior U.K. convictions, which resulted in terms of incarceration of two years and 75 months, respectively, been calculated into his criminal history, Wellesley would have six criminal history points and would be in Criminal History Category III. The Guidelines range of imprisonment for a defendant with a total offense level of 32 and a Criminal History Category III is 151 – 188 months' incarceration. Thus, a sentence at the high end of the applicable Guidelines range (121 – 151 months' incarceration) would fall at the low end of the Guidelines range had Wellesley's prior convictions been accounted for.

"economic and fraud-based crimes are more rational, cool and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." See, e.g., United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (quoting Stephanos Bibas, White-Collar Plea Bargaining and Sentencing After Booker, 47 Wm. & Mary L. Rev. 721, 724 (2005)) (internal quotation marks omitted); United States v. Heffernan, 43 F.3d 1144, 1149 (7th Cir. 1994) ("Considerations of (general) deterrence argue for punishing more heavily those offenses that either are lucrative or are difficult to detect and punish, since both attributes go to increase the expected benefits of a crime and hence the punishment required to deter it."); Drago Francesco, Roberto Galbiati & Pietro Vertova, The Deterrent Effects of Prison: Evidence From a Natural Experiment, 117 J. of Political Econ. 257, 278 (2009) ("Our findings provide credible evidence that a one-month increase in expected punishment lowers the probability of committing a crime. This corroborates the theory of general deterrence.").

Finally, deterrence is particularly warranted given the documented increase in fraudulent conduct in recent years. See Jonathan R. Macey, Fraud in a Land of Plenty, 118 Nw. U. L. Rev. 227, 228 (2023) ("Fraud is on the rise. A recent survey of 1,296 executives in fifty-three countries revealed a rising threat of fraud. An astonishing 46% of surveyed organizations reported experiencing fraud or related economic rimes over the past twenty-four months. Reports of consumer fraud, and 83% of organizations report phishing attacks." (footnotes omitted)).

For these reasons, the government respectfully submits that the Court should impose a sentence at the high end of the Guidelines range of 121 – 151 months' incarceration.

### B. Restitution Is Mandatory and Appropriate

Under 18 U.S.C. § 3663A, the Court shall impose restitution. In United States v. Zangari, 677 F.3d 86, 93 (2d Cir. 2012), the Second Circuit held that restitution must be measured according to the victim's actual loss, not the defendant's gain. Moreover, in calculating restitution, "these losses need not be mathematically precise," and "[a] reasonable approximation will suffice, especially in cases in which an exact dollar amount is inherently incalculable." United States v. Rivernider, 828 F.3d 91, 115 (2d Cir. 2016) (internal quotation marks omitted). The government anticipates submitting a proposed Order of Restitution within 90 days of sentencing.

### IV. Conclusion

For the reasons set forth above, the government respectfully submits that a sentence at the high end of the Guidelines range of 121 – 151 months' imprisonment is appropriate. The

Court should also impose forfeiture in accordance with the Preliminary Order of Forfeiture previously entered by the Court.  See ECF No. 42.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    *Benjamin Weintraub*
Benjamin Weintraub
Assistant U.S. Attorney
(718) 254-6519

cc:    Clerk of the Court (PKC) (by ECF)
Michael Weil, Esq. (by ECF)
U.S. Probation Officer Erica Vest (by Email)